IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 8:23-0749 |
| | ) | |
| | ) | |
| -vs- | ) | **MOTION *IN LIMINE*** |
| | ) | **TO INTRODUCE** |
| | ) | **STATEMENTS OF MEMBERS** |
| J. CHRISTOPHER MCCASLAN | ) | **OF PROSECUTION TEAM** |
| | | **AS IMPEACHMENT AND** |
| | | **SUBSTANTIVE EVIDENCE** |

COMES NOW, the Defendant, J. Christopher McCaslan, by and through undersigned counsel, who moves this Court *in limine* to allow him to introduce out-of-court statements made by members of the prosecution team[1] during the investigation of this case. Specifically, the Defendant contemplates introducing these statements as substantive evidence, to show inconsistencies between members' of the prosecution team in-court testimony and what they said previously, to rebut these members' in court testimony, to show bias and other impeachable characteristics these members possessed during the investigation and/or still possess during their in-court testimony and for other reasons.

---

[1] See generally, c.f., *Arnold v. McNeil*, 622 F. Supp. 2d 1294, 1312 (M.D. Fla. 2009) (citations omitted) (citing numerous cases that define "prosecution team" in the context of a prosecutor's discovery obligations pursuant to *Brady* and stating that members of the "prosecution team" include "investigators and the police.").

1

**FACTS**

On the afternoon of November 9, 2021, a mail carrier delivered a letter to 318 Rice Street in Calhoun Falls, South Carolina. The mail carrier noticed an empty soda can in the mailbox at the time he delivered the letter.

A Calhoun Falls police officer[2] and his fiance' were present at the location when the letter was delivered. When fiancé opened the letter, she noticed powder in the letter and made the officer aware of it. The officer then took steps to investigate: he contacted his supervisor at the police department, who is now deceased ("deceased officer"), he collected portions of the powder for testing and evidence preservation, he spoke to the mail carrier, and he performed other investigative tasks immediately after the letter arrived.

The deceased officer arrived on scene, and he and the officer continued to investigate. They performed multiple field tests on the powder, which yielded different results,[3] and the deceased officer took possession of the letter, the envelope, and what remained of the powder. According to the Government's discovery, the deceased officer then "put all the items except the drug test kits into an evidence bag and put it on his desk at the (Calhoun Falls Police Department or CFPD)." Bates stamp 008. The Government's

---

[2] Because the names of these individuals do not appear in any of the publicly filed pleadings in this case, upon the undersigned's information and belief, this pleading will not mention the specific names of these officers or civilian(s) to continue to protect their privacy.

[3] Ultimately, the powder was found to be a mixture of "milk-based infant formula, water, and Linseed Oil." Bates stamp 003.

discovery contains allegations that a stamp on this envelope is forensically linked to the Defendant. The deceased officer also admitted that he was the one who had put the soda can in the mailbox as a "prank." Bates stamp 008.

During these initial steps in the investigation, the deceased officer notified the chief of police of the CFPD to apprise her of the situation. The officer and deceased officer also enlisted the help of other agencies: an Abbeville County Sheriff's deputy arrived on scene, staying only a short time and leaving, and agents with the South Carolina Law Enforcement Division (SLED) arrived in Calhoun Falls later that afternoon to investigate.

The following day, November 10, 2021, Calhoun Falls Post Office employees notified law enforcement that they had received another suspicious letter from the Greenville Post Office Distribution Center. This letter was addressed to the CFPD and also was found to contain a harmless powder. The second letter referenced the deceased officer as well as another officer with the CFPD, "P.H."

Beginning on November 9th, and continuing in the days, weeks, months, and years that followed, SLED agents conducted multiple, recorded interviews of the officer, deceased officer, P.H., and other law enforcement officers associated with the CFPD. Additionally, some or all of these CFPD officers executed signed statements that discussed investigative steps they took, not only related to the events that occurred on November 9th and later, but also in connection with another possible target of the investigation, the Defendant's wife, "KM." Both the officer and P.H. had investigated KM within the preceding month for engaging in criminal activity on more than one occasion. The

Government has produced in discovery report(s) that officer wrote about his interaction with KM approximately one month earlier.

Consistent with its obligations pursuant to *Brady* and *Giglio* and Rule 16, the Government has produced these recordings of the interviews, reports, statements, and other materials in discovery. These materials contain a large amount of exculpatory information provided by CFPD officers, including but not limited to: (1) statement(s) that mistakes were made during the early phase of the investigation; (2) statement(s) that a CFPD officer participated in the investigation who should not have; and (3) statement(s) to the effect that CFPD officer(s) involved in this investigation engaged in corruption in connection with a political race that was occurring in Calhoun Falls during the relevant time period of this case. Further, the current Chief of the CFPD[4] has made statements to the effect that "record keeping at the CFPD was in disarray when he took over from the prior administration." Bates stamp 945. The current Chief also has stated that he could not locate personnel files of officers within the CFPD upon his assuming office, that evidence stored at the CFPD was not accompanied by "log-in sheets,[5]" and that he had to inventory

---

[4] The current chief of the CFPD was not in office on November 9, 2021. He took office in February of 2022.

[5] Based on the context of the communication, the undersigned interprets the phrase "log-in sheets" as used by the current Chief to mean "property and evidence sheets." As a matter of well-established law enforcement protocols decades old, property and evidence sheets accompany evidence police seize so they can track the identity of each person who comes in contact with a piece of evidence and what that person did with the evidence. Although the undersigned may have missed it, and apologizes if he has, he has not been able to locate any property and evidence sheet that deceased officer generated upon seizing the envelope, letter, and powder that were delivered on November 9th.

4

all the evidence the CFPD stored and move it to a different, secure room within the CFPD. Finally, the Defendant, through his independent investigation, has learned that *Giglio* material related to the deceased officer may be in the possession of the Abbeville County Sheriff's Office, where the deceased officer worked prior to his employment at the CFPD.[6] Should this *Gilgio* information exist, the Defendant would likely seek to introduce statements contained therein that go to the deceased officer's credibility.

## ARGUMENT

The Defendant anticipates either the Government or he will be calling the officer, P.H., the current Chief, and/or other officers in their respective cases-in chief. The Defendant believes it is highly likely that he will attempt to introduce exculpatory evidence through these witnesses either as substantive evidence, prior inconsistent statements, evidence to rebut testimony these witnesses provide, evidence to show law enforcement bias, the bias of other witnesses, and/or to impugn the credibility of law enforcement officers. The Defendant's introduction of this evidence is proper and consistent with the federal rules of evidence.

### This evidence is relevant.

Pursuant to F.R.E. 402:

Relevant evidence is admissible unless any of the following provides otherwise:

- the United States Constitution;

---

[6] The Government has graciously agreed to follow up on this information and to provide this material to the Defendant if and when it becomes available.

- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

F.R.E. 401 defines what "relevant evidence" is:

Evidence is relevant if:

**(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and

**(b)** the fact is of consequence in determining the action.

F.R.E. 401.

Courts have consistently held that exculpatory information, especially as it relates to the credibility of important law enforcement participants in the investigation, is "highly relevant," even for law enforcement officers who do not testify, like the deceased officer. See e.g., *United States v. Alorwornu*, 2024 WL 1050326, at *8 (D. Conn. 2024) (citing and quoting *United States v. Ulbricht*, 858 F.3d 71, 108 (2d Cir. 2017) (abrogated on other grounds by *Carpenter v. United States*, 585 U.S. 296 (2018) ("*Ulbricht* recognizes that, even if an investigator is not called as a government witness, if the Government's trial evidence relies on the investigator's credibility, 'his character for truthfulness would [be] at issue during the trial, and information that impeached his credibility would [be] highly relevant.....'").

In this case, the Government will likely rely to a great extent on officer's and deceased officer's credibility: they were the first officers who handled arguably the most

6

important piece of physical evidence in the case, the envelope and the stamp on the envelope that the Government alleges contains forensic evidence that is favorable to its case. Deceased officer and officer repeatedly tested powder substance in the envelope and letter, and deceased officer was the seizing officer of this evidence and the one responsible for maintaining the integrity of the envelope, stamp, letter, and powder for evidentiary purposes.

Further, deceased officer's and officer's interactions with potential witnesses, including but not limited to KM and the Defendant, and their representations about these interactions are critical both to the Government's ability to prove who knew what when, and/or which of these officers and witnesses are biased against the Defendant and would have a reason to lie.

This evidence is relevant, and, therefore, admissible unless some other rule or statutory or Constitutional provision render it inadmissible.

## **No other provisions of law exclude this relevant evidence.**

The Defendant cannot say with certainty whether the Government will oppose the introduction of this evidence, and if so, the bases on which it will rely to oppose its introduction. Therefore, the Defendant does not wish to speculate by way of responding to arguments the Government has not yet made. Instead, the Defendant will address the specific arguments in his reply the Government makes in its response, if it chooses to do so, as to the specific principles of law that it claims render this evidence inadmissible.

7

At this juncture, however, the Defendant does not believe the Government's potential arguments on inadmissibility will be persuasive. For example, generic justifications parties often use to keep out evidence, like the Federal Rules of Evidence's prohibitions against hearsay or[7] the introduction of extrinsic evidence for impeachment,[8]

---

[7] See generally, *United States v. Gentle,* 361 Fed. Appx. 575, 580–81 (5th Cir. 2010) (citing and quoting *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981) (internal quotation marks and citation omitted) (holding that the district court's exclusion on hearsay grounds of a statement offered to show bias and not offered for its truth constituted error because "[W]henever an out of court statement is offered for some purpose other than to prove the truth of the matter asserted, the rule against hearsay does not apply because the value of the statement does not rest upon the declarant's credibility."); *United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (reversing the district court for its erroneous evidentiary ruling(s) and stating, in part, that Barile could instroduce statements a Government witness made as "they (were) admissible over any hearsay objection because (the Government witness) made them in her capacity as a government official on matters within the scope of her employment, and as such, the statements are of a party-opponent and therefore not hearsay."); *United States v. Cumbie*, 28 F.4th 907, 914 (8th Cir. 2022) (internal quotation marks and citations omitted) ("Ordinarily a prior inconsistent statement is admissible [under Rule 613(b)] only for the purpose of impeachment and not as substantive evidence. When offered for this purpose, rather than for the truth of the matter asserted, it is not hearsay."); *United States v. Harris*, 557 F.3d 938, 942 (8th Cir. 2009) (citations and internal quotation marks omitted) (rejecting Harris' argument that utility records the Government introduced to discredit a defense witness was inadmissible and stating that "t]he evidence at issue here, on the other hand, is rebuttal evidence: Impeachment is an attack on the credibility of a witness, whereas rebuttal testimony is offered to explain, repel, counteract, or disprove evidence of the adverse party.").

[8] See F.R.E. 613(b) (emphasis added) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).").

and/or evidence whose probative value is substantially outweighed by the danger for unfair prejudice,[9] will likely <u>not</u> serve to bar the introduction of this evidence.

## **CONCLUSION**

For the foregoing reasons, the Court should allow the Defendant to introduce statements members of the prosecution team, especially officers of the CFPD, have made in connection with the Government's investigation and prosecution of the Defendant.

Respectfully submitted,

s/ Andrew B. Moorman, Sr.
Attorney for Defendant
Moorman Law Firm, LLC
416 East North Street
2nd Floor
Greenville, South Carolina 29601
864-775-5800
andy@andymoormanlaw.com
Federal ID # 10013

Greenville, South Carolina
July 1, 2024.

---

[9] See generally, *Carter v. City of Jackson, Mississippi*, 2024 WL 2881007, at *2 (S.D. Miss. 2024) (internal quotation marks and citations omitted) (characterizing the exclusion of evidence pursuant to F.R.E. 403 as "an extreme measure" and stating that "[t]he exclusion of evidence under Rule 403 should occur only sparingly.").

9