IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

UNITED STATES OF AMERICA ) CR. NO. 8:23-749
)
vs. )
)
JOHNATHAN C. MCCASLAN )

**OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS SEEKING TO PLACE THE
CALHOUN FALLS POLICE DEPARTMENT ON TRIAL**

Defendant seeks to improperly put the Calhoun Falls Police Department ("CFPD") on trial, confuse the jury about the real issue in the case, and to consume an excessive amount of time doing so. Threatening letters were sent to a CFPD police officer and to the CFPD as a unit. Collectively, they are victims in a case that was investigated by the State Law Enforcement Division ("SLED").[1] The evidence Defendant wants to present is not relevant under Rule 401, and even if it did have any probative value, such value would be substantially outweighed by the danger of unfair prejudice, and jury confusion under Rule 403.

This Omnibus response address ECF Nos., 61, 62, & 63.

## BACKGROUND

Victim 1, at the time of the incident described in the indictment, was a Calhoun Falls Police Officer; Victim 2 was his fiancé. On November 9, 2021, Victims 1 and 2 received a letter in the mail at their home. Victim 2 opened the letter and discovered a powdery substance and a threatening letter. Fearing the substance was fentanyl or some other dangerous chemical, Victim

---

[1] Because the mails were used, the United States Postal Inspection Service served as SLED's federal partner in the investigation; however, the lion's share of the work was done by SLED.

1 instructed Victim 2 to wash in cold water and to put on gloves. Victim 1 also located the mail carrier who had just delivered the mail and suggested that he also wash his hands.

Victim 1 called the Assistant Chief of the CFPD. The Assistant Chief, who is now deceased, responded to the home. Victims 1 and 2 were expecting their small children to arrive home from school and feared for the children's safety. To evaluate the scope of the danger to his family, Victim 1 and the Assistant Chief performed several field tests on the powdery substance and received at least one indication that the substance was fentanyl. The Assistant Chief, with assistance of Victim 1, then placed the letter and envelope into an evidence bag and transported it to the CFPD. He left the sealed evidence bag on his desk.

That same day, the State Law Enforcement Division ("SLED") immediately took over the case. The SLED bomb squad responded the to the CFPD, located the sealed evidence bag on the desk, cut it open, and performed tests on the remnants of the powdery substance. SLED determined that the powdery substance was harmless. SLED officers took the letter and envelope into custody and transported it to the SLED lab in Columbia.

SLED investigators, while the bomb squad addressed the potential threat posed by the powder, interviewed witnesses. SLED investigators took voluntary statements from Victim 1, Victim 2, the Assistant Chief, and several others. SLED investigators returned the next day to conduct more interviews of witnesses and to address a second letter with a powdery substance that was sent to the CFPD but intercepted by postal workers before delivery.

Over the next few weeks, SLED investigators continued to interview witnesses and gather evidence in and around Calhoun Falls. Scientists at the SLED laboratory examined the Rice Street letter and discovered Defendant's DNA on the stamps.

## SUMMARY OF THE ARGUMENT

Victim 1 and the Assistant Chief triaged the November 9, 2021 incident because of concern for the family. They field tested the substance in the letter, placed the letter and envelope in an evidence bag, and the Assistant Chief took the evidence bag to the CFPD where the SLED bomb squad tested and recovered the evidence. The CFPD had no more involvement with this matter.

The Government agrees that defense counsel can question Victim 1 about his handling of the letter, the field testing performed, and what he saw (or didn't see) the Assistant Chief do. However, Defendant wants to go much further. He wants to call the new police chief and elicit testimony that when the new chief took over, he found the office in disarray with poor or nonexistent recordkeeping on everything from personnel files to evidence logs; to delve into allegations that CFPD officers improperly ticketed a mayoral candidate related to campaign signage; to introduce evidence—which the Defendant admits he has no proof of--that the Assistant Chief was terminated from a previous policing job for falsely reporting his whereabouts to a superior; and to offer opinion evidence from PH—a current CFPD officer— that he did not trust the Assistant Chief based on the alleged termination. In other words, Defendant wants the jury to put the CFPD on trial and to infer that nothing touched by any CFPD officer can be trusted.

Defendant's proposed course will only lead to jury confusion, unfair prejudice, and wasted time. As stated below, the Government agrees that Defendant can use cross-examination to challenge the weight the jury gives to the Rice Street letter. But because Defendant was careless and left his DNA on the stamps of the letter, he is now seeking to create as many irrelevant and unduly prejudicial distractions as possible to shift the jury's attention to

3

extraneous matters in hopes of hanging the jury or obtaining an acquittal. The Government simply asks that the Court to keep Defendant within the riverbanks of the rules of evidence.

## LEGAL ANALYSIS

I.    **Defendant should not be permitted to introduce evidence of CFPD investigative techniques. (Response to ECF No. 61)**

A.  **Legal Standard**

The quality of the government's investigation is not an issue in the trial as the only question for the jury is whether the evidence proves the defendant committed the crimes charged beyond a reasonable doubt. *See United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992); *see also United States v. Temple*, 122 F.3d 1064 (4th Cir. 1997) (unpub) (relying upon *Mason* to affirm instruction that "law enforcement techniques are not your (the jury's) concern").[2] For this reason, attacks on the government's investigation are irrelevant and should generally be inadmissible. *See United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998) ("Under our system if criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation."); *see also United States v. Patrick*, 248 F.3d 11 (1st Cir. 2001); *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994). Moreover, in reactive investigations, the techniques or strategies used or not used by law enforcement to investigate the actions of the defendant do not make a fact more or less likely to have occurred--as the criminal activity was committed before law enforcement was involved.

---

[2] A variety of cases have affirmed this basic principle that the jury is concerned with the evidence, or lack thereof, and not law enforcement's actions. See, e.g., *United States v. Brown*, 474 Fed. Appx 954, 946 (4th Cir. 2012); *United States v. Walker*, 66 F.3d 318 (4th Cir. 1995) (unpub). *United States v. Borda*, 178 F.3d 1286 (4th Cir. 1999) (unpub) (affirming exclusion of defense expert witness on investigative techniques because it was "not relevant and would not assist the jury in determining any fact in issue.") (citing *Mason v. United States*, 719 F.2d 1485, 1490 (10th Cir. 1983) (finding no abuse of discretion to exclude expert testimony of private detective offered by defendant to show inadequacy of police investigative techniques)).

**B.  Discussion of the Issue**

As an initial matter, the Government agrees that the defense can question Victim 1 and Victim 2 about the handling of the letter at their home, the efforts to field test the substance, in hindsight whether Victim 1 used best practices in handling evidence he knew or should have known would become part of a criminal investigation, and whether Victim 1 should have left all dealings with the letter to other officers because he was a victim of the threatening communication. Similarly, because the Assistant Chief has passed away, Defendant can point out in questioning that we know nothing about his handling of the evidence after he left 318 Rice Street.  This is all fair game under Fed. R. Evid. 401.

But this is not sufficient for the Defendant. He wants to put the CFPD on trial because, at some time after this incident, the new police chief came in and found that record keeping was in disarray. Defendant ignores that this is a SLED case.  SLED responded in force that day.  The bomb squad examined the letter for hazardous substances, SLED agents took custody of the evidence, SLED agents began interviewing witnesses and victims.  Victim 1 with the help of the Assistant Chief did conduct a field test of the powder in the envelope because he was afraid for his family and wanted to know what they had been exposed to.  But this hardly puts the CFPD in the spotlight of the investigation so that extraneous matters become relevant.

The evidence is not relevant under Rule 401, and even if it did have any probative value, such value would be substantially outweighed by the danger of unfair prejudice, and jury confusion under Rule 403. The question before the jury will be whether or not Defendant engaged in the conduct charged in the Second Superseding Indictment and did so with the requisite intent. The orderliness of the CFPD has no tendency to make the charges in the indictment more or less probable. Fed. R. Evid. 401. The evidence also could only lead to jury

confusion, unfair prejudice, and wasted time. Fed. R. Evid. 403. Permitting the defense to offer evidence regarding the new chief's assessment of his predecessor's management could only result in a sideshow having a relationship that is attenuated at best to the central question whether Defendant is or is not guilty of the charges against him. *See United States v. Moore*, 2014 WL 7344093, at *2 (W.D. Pa. Dec. 23, 2014) (excluding evidence under Rule 403 where its admission "would merely create a sideshow" of unrelated issues); *Sarin v. Poojan, Inc.*, 2010 WL 5463250, at *6 (M.D. Pa. Dec. 29, 2010) (excluding evidence constituting a "sideshow that distracts the jury and lengthens the trial").

## II. The Assistant Chief's credibility is irrelevant under Rule 401 because he is deceased, his involvement in the case is corroborated by other testimony or evidence, so the Government does not rely on the Assistant Chief's credibility to prove its case. (Response to ECF No. 62)

### A.    Legal Standard

Evidence is relevant when it has any tendency to make a fact more or less probable than it would be without the evidence and that fact is of consequence in determining the action. Fed. R. Evid. 401. While typically reputation or opinion evidence of a testifying witness's truthfulness or untruthfulness is relevant, reputation/opinion testimony for truthfulness of an officer who does not testify or—as Defense themselves stated (ECF No. 63 at 4)—whose credibility is not relied on is not a fact required to decide the issue. *United States v. Ulbricht*, 858 F.3d 71, 108 (2d Cir. 2017) (abrogated on other grounds by *Carpenter v. United States*, 585 U.S. 296 (2018)) ("Had [the investigating agent] been called as a government witness, or had any of the government's evidence relied on his credibility, his character for truthfulness would have been at issue during the trial, and information that impeached his credibility would have become highly relevant."); *see United States v. Banks*, 2024 WL 2947272, at *5 (4th Cir. June 12, 2024) ("The Defendants' *Brady/Giglio*-based argument isn't a true *Brady/Giglio* claim because the newly discovered

evidence is not exculpatory and, while it may have been of some theoretical impeachment value, [the detective] did not testify at the trial."). Additionally, a formal chain of custody is not required, and the Government only must show that the item is what the government has purported it to be. *United States v. Jones*, 356 F.3d 529, 536 (4th Cir. 2004).

### B.     Discussion of the Issue

Here, the Assistant Chief is not a testifying witness because he is deceased. Additionally, the Government does not rely on evidence of the Assistant Chief 's credibility because his involvement is limited only to the initial encounter with the evidence described above and the Assistant Chief 's actions are corroborated by other witnesses or evidence. The initial call by Victim 1 occurred at approximately 12:20 P.M. Once on scene, at no time before the Assistant Chief sealed the letter, envelope, and powder into an evidence bag was he alone with the evidence. Additionally, Victim 2 took pictures of the evidence prior to the Assistant Chief sealing the evidence bag. Once sealed, the intact evidence bag was taken to CFPD and SLED agents will testify the evidence bag was sealed when taken into their possession at approximately 4:00 P.M. the same day. Victim 1, Victim 2, and SLED agents will be available for Defense to cross examine about what they saw the Assistant Chief do and what they found at the police station.

Therefore, any opinion or reputation evidence relating to the credibility of the Assistant Chief   is not a fact of consequence because the evidence does not rely on the Assistant Chief's credibility to determine if the Defendant committed the crimes he is charged with in the Second Superseding Indictment.

Federal Rule of Evidence 608(a) allows the admission of evidence which attacks or supports "[a] witness's credibility . . . by testimony for truthfulness, or by testimony in the form

of an opinion about that character." However, a non-testifying witness whose credibility is not central to the Government's case is not impeachable. *See United States v. Banks*, 2024 WL 2947272, at *5 (4th Cir. June 12, 2024) (" . . . while [the evidence] may have been of some theoretical impeachment value, [the detective] did not testify at the trial."); *United States v. Quinones-Chavez*, 641 F. App'x 722, 726 (9th Cir. 2016) (finding that the trial judge correctly ruled that evidence of a absent witness's criminal conviction was inadmissible); *United States v. Taylor*, 2015 WL 5923580, at *4 (S.D. Ala. Oct. 12, 2015) ("The requested impeachment information would be of no value to [the defendant] at trial because he cannot introduce evidence to impeach a non-testifying witness, nor can he call a witness for the sole purpose of impeaching his/her credibility.").

The Government notes that Defendant avers that the rule he appeals to applies to "important law enforcement participants in the investigation." ECF No. 62 at 4. To describe the Assistant Chief as an important law enforcement participant in the investigation is unsupportable. No doubt the SLED investigators are important law enforcement participants, but the Assistant Chief who simply taxied the letter to the police station? In support of his argument, Defendant cites *United States v. Alorwornu*, 2024 WL 1050326, at *1 (D. Conn. Mar. 11, 2024) in which the credibility of an Officer Hanna was at issue. Officer Hanna, however, was "the case agent" who led the investigation from 2018 until 2022. *Id.* at *1. He subpoenaed records, identified Defendant as a target, and ran the multiyear investigation before being replaced by an FBI agent. The information at issue in Hanna's discplinary file was ultimately held "not favorable to the accused." *Id.* at *6.

Finally, Federal Rules of Evidence 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of

the issues, or misleading the jury . . . ." Instead of focusing the jury on the facts of the case, Defense would have the jury contemplate the truthfulness of a deceased Assistant Chief who—unfortunately by God's design—cannot testify. This is not a case of the Government hiding bad impeachment evidence by not calling a key police officer to testify.  The Assistant Chief essentially served as a taxi driver taking the sealed evidence bag from Rice Street to the police station. Additionally, Defense distracts the jury by placing the Assistant Chief on trial along with CFPD even though this is a SLED case.

### III. Instances/allegations of unrelated police misconduct are inadmissible. (Response to ECF No. 63)

#### A.     Legal Standard

Courts have regularly held that evidence of other unrelated incidents of police misconduct is inadmissible. *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000) (holding evidence of another unrelated shooting involving the officer defendant was not admissible as unduly prejudicial); *Castro v. Cnty. of Los Angeles*, 2015 WL 4694070, *11-*12 (C.D. Cal. Aug. 3, 2015) (holding evidence of police killings of civilians in other cases and the protests related thereto was inadmissible); *Puckett v. Zamora*, 2015 WL 3869662, *2 (E.D. Cal. June 23, 2015) (evidence of other unrelated incidents were inadmissible);  *Fox-Martin v. Cnty. of Cook*, 2010 WL 4136174, at *4 (N.D. Ill. Oct. 18, 2010) (holding that "evidence of police conduct unrelated to the [defendants] in this case has only minimal probative value and is highly inflammatory and prejudicial").

#### B.     Discussion of the Issue

Defendant seeks to make this case about the Calhoun Falls mayoral race and whether a candidate was improperly ticketed by Victim 1 and/or the Assistant Chief for an offense related to signage.  The mayoral race has no relevance to this case.  Fed. R. Evid. 401.  Creating a

sideshow about local politics will only confuse the jury and consume valuable time.  Fed. R. Evid. 403.

Defendant claims such evidence is essential to challenge the credibility of Victim 1 and the Assistant Chief.  The Government supposes Defendant wants to challenge whether the threatening letter was actually received by Victim 1 and 2 or whether the letter recovered by SLED is the actual letter received.  As an initial matter, there is no question about the receipt of the letter.  Clerks at the post office recall seeing the suspicious envelope and one recalled marking through the 41 cent stamps so they could not be used again.  The mail carrier confirms that he delivered the envelope to 318 Rice Street.  The ring doorbell camera captured video and audio of Victim 2 retrieving the mail and coming inside.  Once inside, audio from the camera is clear as Victim 2 reads the letter out loud. Victim 2 also used her cell phone to take a picture of the letter and envelope before the Assistant Chief and Victim 1 placed it in an evidence bag.  The pictures show that the letter in SLED's custody is the same letter that was received.  There has been no switch and the Government is unclear if Defendant really believes this or intends to make such an argument.

The Government also assumes that Defendant will make a chain of custody argument. However, when there are witnesses who can identify the real evidence as the actual object about which they are testifying, the chain of custody is not relevant. *United States v. Summers*, 666 F.3d 192, 201 (4th Cir. 2011); *see* Fed. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

Here, the chain of custody is irrelevant because Victims 1 and 2 can testify the items presented in court—the powder in the letter, the letter, and the envelope—are the items that

arrived at their home and the items they saw the Assistant Chief place in an evidence bag.
Additionally, Victim 2 documented the items with pictures prior to their collection by the
Assistant Chief and the pictures will also be presented at trial. SLED agents will testify to the
bomb squad responding that same day to the police station, examining the items in the evidence
bag, and SLED taking the items into custody. Because these witnesses can provide testimony
that identifies the actual object discussed in their testimony and will be available for
contemporaneous cross examination by the defense, the chain of custody is irrelevant.

However, even if the court decides the chain of custody is relevant, not every person or
link in the chain of custody is required to testify to establish a perfect chain of custody nor does
the absence of chain of custody testimony implicate the Confrontation Clause. *Melendez-Diaz v.*
*Massachusetts*, 557 U.S. 305, 311, n. 1 (2009); *see United States v. Howard-Arias*, 679 F.2d 363,
366 (4th Cir. 1982). In deciding if evidence is admissible, the district court only needs to satisfy
itself that it was "improbable that the original item had been exchanged with another or
otherwise tampered with." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). A strict
chain of custody "is not an iron-clad requirement" and a missing link in the chain of custody
does not make real evidence inadmissible "so long as there is sufficient proof that the evidence is
what it purports to be and has not been altered in any material respect." *United States v. Ricco*,
52 F.3d 58, 61-62 (4th Cir. 1995). Because there is a presumption of regularity supporting
official acts of public officers and the court presumes their duties are properly discharged, the
Government only needs to make *prima facie* showing of the evidence's authenticity. *United*
*States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926); *see United States v. Vidacak*, 553 F.3d
344, 349 (4th Cir. 2009). Even if the court determines there is a missing link in the chain of
custody, the missing link only goes to the weight of the evidence and not its admissibility.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311, n. 1 (2009) (quoting *United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988).)

Here, the Assistant Chief's unavailability is simply one link in the chain of custody. With the witness testimony described above, these witnesses will be able to testify to the envelope collected at the scene is the same envelope collected by SLED.  Any doubts the missing testimony of the Assistant Chief may raise regarding the chain of custody is for the jury to weigh in determining the import of the evidence.

## CONCLUSION

The Government agrees that the Defendant may question Victims 1 and 2 about the receipt of the letter, the handling of the letter, field testing, and placement of the letter in the evidence bag that SLED would later cut open at the CFPD.  But a broad inquiry into perceived deficiencies the new chief observed when he took over--after the November 9, 2021 letter was received--in the realm of personnel files, informant files, and evidence logging is not relevant to this case and has the potential to confuse the jury and consume precious time.

Similarly, this case has nothing to do with signage tickets related to the Calhoun Falls mayoral race, whether PH liked the Assistant Chief, or whether a non-testifying witness—the Assistant Chief—misstated to his boss at another police department about his whereabouts.


                                ADAIR F. BOROUGHS
                                United States Attorney

                    By:     s/ William J. Watkins, Jr.
                                WILLIAM J. WATKINS, JR.
                                Assistant United States Attorney
                                Federal I.D. No. 7863
                                55 Beattie Place, Suite 700
                                Greenville, South Carolina 29601