IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 8:23-749 |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHNATHAN C. MCCASLAN | ) | |

**RESPONSE IN OPPOSITION TO MOTION TO ADMIT LAW ENFORCEMENT
STATEMENTS AS SUBSTANTIVE EVIDENCE**

The Government opposes Defendant's request to admit law enforcement officers' out-of-court statements at any time during the trial and without regard to the witnesses' actual trial testimony. *See* ECF No. 64. If the witnesses testify consistently with their recorded interviews and thus there is nothing to impeach, Defendant still desires to enter their previous statements as substantive evidence. The general rule in criminal cases is that law enforcement officers are not considered party opponents under Fed. R. Evid. 801(d)(2)(D). And Rule 801, although only cited in a footnote by the Defendant and not applicable here, appears to be the only possible vehicle to accomplish what Defendant desires: wholesale admission of out-of-court statements with no limitations.

**BACKGROUND**

Victim 1, at the time of the incident described in the indictment, was a Calhoun Falls Police Officer; Victim 2 was his fiancé. On November 9, 2021, Victims 1 and 2 received a letter in the mail at their home. Victim 2 opened the letter and discovered a powdery substance and a threatening letter. Fearing the substance was fentanyl or some other dangerous chemical, Victim 1 instructed Victim 2 to wash in cold water and to put on gloves. Victim 1 also located the mail carrier who had just delivered the mail and suggested that he also wash his hands.

Victim 1 called the Assistant Chief of the CFPD.  The Assistant Chief, who is now deceased, responded to the home.  Victims 1 and 2 were expecting their small children to arrive home from school and feared for the children's safety.  To evaluate the scope of the danger to his family, Victim 1 and the Assistant Chief performed several field tests on the powdery substance and received at least one indication that the substance was fentanyl.  The Assistant Chief, with assistance of Victim 1, then placed the letter and envelope into an evidence bag and transported it to the CFPD. He left the sealed evidence bag on his desk.

That same day, the State Law Enforcement Division ("SLED") immediately took over the case.  The SLED bomb squad responded the to the CFPD, located the sealed evidence bag on the desk, cut it open, and performed tests on the remnants of the powdery substance.  SLED determined that the powdery substance was harmless.  SLED officers took the letter and envelope into custody and transported it to the SLED lab in Columbia.

SLED investigators, while the bomb squad addressed the potential threat posed by the powder, interviewed witnesses.  SLED investigators took voluntary statements from Victim 1, Victim 2, the Assistant Chief, and several others.  SLED investigators returned the next day to conduct more interviews of witnesses and to address a second letter with a powdery substance that was sent to the CFPD but intercepted by postal workers before delivery.

Over the next few weeks, SLED investigators continued to interview witnesses and gather evidence in and around Calhoun Falls.  Scientists at the SLED laboratory examined the Rice Street letter and discovered Defendant's DNA on the stamps.

### SUMMARY OF THE ARGUMENT

The Government agrees that if, say, a law enforcement witness testifies to "X" but said "Y" in his recorded interview with SLED agents, Defendant can impeach the witness. It is black

2

letter law that counsel may impeach a witness by showing that, on a previous occasion, the witness made a statement inconsistent with the witness's trial testimony. This is fair game.

But this is not sufficient for Defendant.  Defense counsel has explained to the undersigned that "I want to have the flexibility to introduce these statements when I want, and I don't want to be dependent on a witness's answer to make them admissible: and I want the jury to be able to consider these statements as substantive evidence, and not just for impeachment as to the credibility of particular witnesses."[1] In support of broad use of out-of-court statements, Defendant cites in his motion only the general rule that relevant evidence is admissible while relegating specific rules related to hearsay and impeachment evidence to footnotes.  Simply put, the impeachment and hearsay rules do not support the broad use of out-of-court statements that Defendant seeks.  The court should deny Defendant's motion.

## LEGAL ARGUMENT

**The rules of evidence do not support making hours of recorded interviews substantive evidence and admissible without regard to the law enforcement witness' testimony at trial.**

### A. Status as a police officer does not automatically make a person a member of the prosecution team.  Moreover, members of the prosecution team are not automatically party opponents.

Defendant apparently seeks to declare "the prosecution team" as party opponents under the rules of evidence.  Defendant never enumerates who he considers members of the prosecution teams or what portions of their statements he wants to admit.  From the tenor of the motion, the Government assumes that Defendant believes that all members of the CFPD at the time the letters were sent are members of the prosecution team and also party opponents.

---

[1] The quoted language is from a 7/8/2024 email wherein defense counsel explained to the undersigned exactly what he was seeking with ECF No. 64.

When imputing knowledge to prosecutors for *Brady* purposes, determining who is a member of the prosecution team is not a bright line rule—it does not turn on the status of the person as a law enforcement officer, prosecutor, or other government official—instead it is evaluated on a case-by-case basis by examining the specific circumstances of what the person did not who the person is. *Avila v. Quarterman*, 560 F.3d 299, 308 (5th Cir. 2009); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir.1971) ("But the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation."); *United States v. Morell*, 524 F.2d 550, 555 (2d Cir.1975) (". . . the propriety of imputing knowledge to the prosecution is determined by examining the specific circumstances of the person alleged to be an 'arm of the prosecutor'."). However, like with the Assistant Chief, even when officers are remotely involved in the investigation, they are not always so integral to the prosecution team that imputation is proper. *See United States v. Taylor*, 942 F.3d 205, 225-26 (4th Cir. 2019) (declining to extend *Brady* "beyond its scope" by imputing knowledge to prosecutors that is solely within the possession of agents outside of the prosecution team on the case.); *United States v. Stewart*, 323 F.Supp.2d 606, 616–18 (S.D.N.Y. 2004) (declining to impute knowledge of a forensic expert from the Secret Service lab who provided trial support for the prosecution and testified as an expert); *United States v. Stewart*, 433 F.3d 273, 298-99 (2d Cir. 2006) (holding that an expert witness who analyzed evidence, assisted the prosecution in preparing cross-examination questions, participated in a mock examination, and testified at trial was not a member of the prosecution team.).

As for Victim 1, in general, the prosecution team does not include cooperating witnesses. *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) ("Assuming without deciding that under some circumstances a certain cooperating witness or informant could be found to be a

member of the prosecution team, this is not such a case."). A witness, even a law enforcement officer, who testifies to what they witnessed but does not do more is not part of the prosecution team. *United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir. 2003) (discussing *Weatherford v. Bursey*, 429 U.S. 545 (1977), "Weatherford [an undercover agent] testified only as to acts to which he had been an eyewitness. His testimony was directed only to objective factual matters and was independent of what he knew about Bursey's [the defendant's] trial strategy.")

As for the Assistant Chief, he had remote involvement and essentially served as a courier to take the Rice Street letter to the CFPD.

As for PH mentioned in the motion, he was a Captain at the CFPD, but the Government does not believe he was even on duty the day the Rice Street letter was sent.

The Court should not become bogged down in determining who is a member of the prosecution team. Such status is irrelevant to party opponent status, which is the heart of Defendant's motion.

B. **The general rule in criminal cases is, as Government investigators are a disinterested party, they are not considered party opponents**.

Even if the Assistant Chief or Victim 1 fall under the "prosecution team" definition for *Brady*, this is the incorrect definition to use. The statements the defense intends to use are not *Brady* material, instead they are out of court statements the defense intends to introduce for truth of the matter asserted—the statements are hearsay. Fed. R. Evid. 801(c). Or the statements are impeachment material insofar as Defendant assumes the witnesses will testify contrary to their recorded interviews. Hearsay is inadmissible and there is not a non-hearsay or hearsay exception applicable. Fed. R. Evid. 802. Because the statements are hearsay, when determining if the declarant in question is a "party opponent" under the party opponent exception, the courts use a different definition. Fed. R. Evid. 801(d)(2).

Defendant insists that the hours of recorded interviews are not hearsay and are not offered for the truth of the matter.  (ECF No. 64 at 8)  This is a sweeping claim—especially considering that Defendant has not identified any particular portions of the interviews to be used so the Court and the Government can verify Defendant's assertion.  The cases Defendant cites rely heavily on the out-of-court statements being used for impeachment and not the truth of the matter.  The Government absolutely agrees that Defendant can impeach a witness with a prior inconsistent statement and the hearsay rules do not bar this.

The general rule in criminal cases is, as Government investigators are a disinterested party, they are not considered party opponents. *See, e.g.*, *United States v. Prevatte*, 16 F.3d 767, 779 n. 9 (7th Cir.1994); *see also United States v. Garza*, 448 F.3d 294, 299 (5th Cir.2006); *United States v. Arroyo*, 406 F.3d 881, 888 (7th Cir. 2005); *Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993) (affirming rule for criminal trials but questioning applicability of rule to civil litigation); *cf. United States v. Morgan*, 581 F.2d 933, 938 (D.C. Cir. 1978) (questioning applicability of rule when Government had expressed its belief in the statement of the declarant). A narrow exception for criminal cases exists as some circuits hold statements made by a prosecutor are admissible against the Government under 801(d)(2)(D) under the theory prosecutors have the power to bind the sovereign. *See, e.g., United States v. Salerno*, 937 F.2d 797, 811–12 (2d Cir. 1991); *United States v. DeLoach*, 34 F.3d 1001, 1005 (11th Cir. 1994); *United States v. Garza*, 448 F.3d 294, 298 (5th Cir. 2006). Courts have routinely declined to extend this narrow exception to other Government agents or even other prosecutors not involved in the prosecution of the instant case. *See, e.g., United States v. Martinez-Saavedra*, 372 F. App'x 463, 464–65 (5th Cir. 2010) ("We have previously declined to apply Rule 801(d)(2)(D) to a statement made by a government agent because the statements of individual agents do not bind

the sovereign except in rare circumstances. *See United States v. Garza*, 448 F.3d 294, 298–99 nn.14–16 (5th Cir. 2006).”); *United States v. Prevatte*, 16 F.3d 767, 779 n.9 (7th Cir. 1994) (“[C]ourts faced with this issue have refused to apply [Fed. R. Evid. 801(d)(2)(D)] to government employees testifying in criminal trials based on the rationale that no individual can bind the sovereign.”); *United States v. Yildiz*, 355 F.3d 80, 81–82 (2nd Cir. 2004) (“[O]ut-of-court statements of a government informant are not admissible in a criminal trial pursuant to Rule 801(d)(2)(D) as admissions by the agent of a party opponent.”); *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979) (finding telephone statements made by CIA employee to court reporter are not admissible as admissions of the government since government employees not servants of government for purposes of admissions rule); *United States v. Edwards*, No. 16-20070-01-CM, 2019 WL 5196614, at *14 (D. Kan. Oct. 15, 2019).

Defendant cites *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002) for the proposition that the entirety of law enforcement officers’ statements are admissions by party opponents. *Barile* concerned an 18 U.S.C. § 1001 prosecution where the critical question was whether the defendant made a materially false statement by indicating that the appropriate tests had been run on a cardiac monitor when the tests had been run on the individual components and not the completed medical device. *Id.* at 754. Marian Krone was the FDA official who reviewed defendant’s filing with the statements about testing. At trial, she testified “that component testing is never appropriate for integrated cardiac monitors.” *Id.* at 755. Defendant sought to impeach her with FDA documents indicating “that component testing is appropriate for such devices” and where Krone indicated that no new information she had received (presumably about the component testing) would have changed her mind on approving the medical device. *Id.* The district court had excluded the prior statements under a Rule 403 analysis, but the Fourth

7

Circuit held that "the district court should have admitted the prior statements as impeachment evidence." *Id.* at 754. In remanding for retrial, the Fourth Circuit indicated that the district court should decide whether the statements in the FDA documents had been adopted by Krone, and if so, the hearsay rules would not prohibit the evidence "because Krone made them in her capacity as a government official on matters within the scope of her employment, and as such, the statements are of a party opponent." *Id.* at 758.

*Barile* dealt with high-level FDA official—Krone—who told FDA investigators one thing but offered different testimony at trial.  The Fourth Circuit's instructions to the district court were to ensure that the statement in the papers of FDA investigators were indeed attributable to Krone, *i.e.*, did she really say what appeared in the investigators notes. One would assume that the investigator could easily confirm that and end the matter.  Indeed, proper impeachment procedure would be to call the investigator, ask if Krone told him "X," and, if he confirms the content of the notes, argue to the jury that Krone lied in her trial testimony when she said "Y."  It is not clear at all why the party opponent issue was raised or even relevant. Indeed, the Fourth Circuit addresses the party opponent concern with two sentences, *id.* at 758, and states hearsay is not a problem. (It would be akin to the Government claiming in this case that, say, Victim 1 has to "adopt" a statement contained in a SLED MOI before Defendant could impeach Victim 1 by calling the SLED agent to testify.)  Furthermore, there is no  analysis of who can be a party opponent and the general rule that Government agents are not party opponents.  Of course, such analysis was not required.

*Barile* does not address whether a law enforcement officer investigating a criminal matter is a party opponent because there was no need.  Krone was not a law enforcement agent but an FDA employee who reviewed and acted upon the allegedly false and material statements in the

510(k) submission form completed by the defendant.  Hence, in determining whether a false and material statement was made to the FDA, the impact the statement had on the FDA official reviewing the submission—as outlined in the FDA criminal investigators MOI indicating that Krone would not have changed her decision to approve the device had she known only components underwent testing—goes to the heart of whether the FDA was lied to about a material matter and thus was a victim in the criminal case. Consequently, *Barile* has no impact on the general rule in criminal cases that Government investigators are a disinterested party and are not considered party opponents.

Applying the general rule here, none of the out of court statements the Defendant wants to introduce to prove the truth of the matter asserted were uttered by a prosecutor and as this is a criminal case, not a civil one, the statements are hearsay. As such, the defense cannot introduce these statements as substantive evidence. The Government acknowledges they can be used for impeachment purposes or to refresh recollection. 2 *Wharton's Criminal Evidence* § 9:25 (15th ed.) ("Counsel may impeach a witness by showing that, on a previous occasion, the witness made a statement inconsistent with the witness's trial testimony."); 98 C.J.S. *Witnesses* § 745 ("the credibility of a witness is subject to attack for impeachment by prior statements which are inconsistent with, or contradictory to, the testimony the witness has given").  But the demand to introduce out-of-court statements by all law enforcement witnesses at any time and as substantive evidence has no support in the Federal Rules of Evidence.

## CONCLUSION

The rules of evidence allow defense counsel to impeach a witness by showing that, on a previous occasion, the witness made a statement inconsistent with the witness's trial testimony. The rules do not allow him to admit law enforcement officers' out-of-court statements at any time during the trial and without regard to the witnesses' actual trial testimony.


                                    ADAIR F. BOROUGHS
                                    United States Attorney

By:    s/William J. Watkins, Jr.
          WILLIAM J. WATKINS, JR.
          Assistant United States Attorney
          Federal I.D. No. 7863
          55 Beattie Place, Suite 700
          Greenville, South Carolina 29601