IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 8:23-0749 |
| | ) | |
| | ) | |
| -vs- | ) | **REPLY TO USA'S** |
| | ) | **RESPONSE AT** |
| | ) | **DOCKET ENTRY 81** |
| J. CHRISTOPHER MCCASLAN | ) | |


COMES NOW, the Defendant, J. Christopher McCaslan, who replies to the Government's response contained in docket entry 81: the response to the Defendant's Motion to Admit Statements of Members of Prosecution Team as Impeachment Evidence and as Substantive Evidence.  In its response, the Government concedes that the Defendant may introduce statements for all of the reasons the Defendant articulated in its Motion except one, inaccurately characterizes the Defendant's position on other issues, and imprecisely discusses the Federal Rules of Evidence and how they apply to this case.

**<u>The Government concedes that the Defendant May Introduce Statements<br>for all of the reasons he set forth in his Motion Except One.</u>**

The Defendant's Motion put both the Court and the Government on notice that he will seek to introduce into evidence statements of law enforcement witnesses under various theories, depending on how the Federal Rules of Evidence apply to a particular circumstance.  For example, the Defendant states in his Motion that he will seek to introduce statements of law enforcement witnesses for impeachment purposes "to show inconsistencies between (their) in-court testimony and what they said previously. . . . "

1

Docket entry 64, at 1.  The Government wholly agrees with this concept, and admits "[t]his is fair game."  Docket entry 81, at 3.  The Government also does not seem to contest the propriety of the Defendant's introduction of statements of law enforcement witnesses to "rebut their in-court testimony, to show bias and other impeachable characteristics" these officers possessed during the investigation and/or still possess.  Docket entry 64, at 1.  In fact, the only basis for the introduction of these statements the Government appears to oppose is for their use as substantive evidence.

**The Government inaccurately characterizes the Defendant's position(s).**

The Government characterizes the Defendant's assertions inaccurately.  For example, the Government says "[t]he Defendant insists that hours of recorded interviews are not hearsay and not offered for the truth of the matter asserted.  This is a sweeping claim- especially considering the Defendant has not identified any particular portions of the interviews to be used so the Court and the Government can verify the Defendant's assertion."  Docket entry 81, at 6.

The Defendant never "insist(ed) that hours of recorded interviews are not hearsay and not offered for their truth."  In explaining his position as to the admissibility, in particular the relevance of certain evidence, the Defendant confined his discussion to two members of the prosecution team: "officer," who was at the residence when the letter arrived, and "deceased officer," who was officer's supervisor and who handled arguably the most critical piece of physical evidence to the Government's case.  Both of these officers worked for the Calhoun Falls Police Department (CFPD) at the time, and both

2

conducted critically important tasks in furtherance of the investigation and in generating evidence the Government will likely seek to introduce in its case-in-chief.

The disagreement among the parties with this motion appears to concern exclusively the Defendant's introduction of statements of officer and deceased officer as substantive evidence. The Defendant would be happy to provide the Court with particularity the statements of these witnesses he may seek to introduce as substantive evidence. However, he is concerned if he does so in the presence of the Government he will be telegraphing his defense to the Government, and inadvertently be assisting it in its preparation for trial. Should the Court be amenable, the Defendant would be happy to provide them to the Court *in-camera*. Obviously, if the Court directs the Defendant to make these statements known to both the Government and to the Court, he will comply with the Court's directive.

### The Government imprecisely applies the Federal Rules of Evidence to this Case

The Government states in its response, "[t]he statements the defense intends to use . . . are out of court statements the defense intends to introduce for truth of the matter asserted—the statements are hearsay. Fed.R.Evid. 801(c)." Docket entry 81, at 5. Statements the Defendant intends to introduce as substantive evidence will likely be introduced for their truth. However, contrary to the Government's argument, not all out-of-court statements introduced for their truth are hearsay.

F.R.E. 801(d)(2) specifically excludes from the definition of "hearsay" statements offered against "the opposing party" pursuant to this subsection, regardless of whether the

party offers the statements for their truth. If the statement comports with the requirements

of F.R.E. 801(d)(2) it is categorically not hearsay.

Pursuant to F.R.E. 801(d)(2), a statement is not hearsay if

"The statement is offered against an opposing party and:

**(A)** was made by the party in an individual or representative capacity;

**(B)** is one the party manifested that it adopted or believed to be true;

**(C)** was made by a person whom the party authorized to make a statement on the subject;

**(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

**(E)** was made by the party's coconspirator during and in furtherance of the conspiracy."

The Government appears to take the position that a defendant cannot introduce the

out-of-court statement of a member of the prosecution team,[1] for example a police officer

---

[1] The Government criticizes the Defendant's reference of the "prosecution team" concept, which originated in the context of understanding the breadth and width of the Government's discovery obligations, as irrelevant in the context of a discussion of F.R.E. 801(d)(2). Docket entry 81, at 5. It is highly relevant in the context of this discussion. If a state or local police officer's failure to disclose information can be imputed to the Government for discovery purposes, the out-of-court statement of the officer also can be imputed to the Government. The Government cites no authority to the contrary, and the Defendant maintains that at least the officer and deceased officer are members of the prosecution team. See e.g., *United States v. Antone,* 603 F.2d 566, 570 (5th Cir.1979) ("In the instant case, extensive cooperation between the investigative agencies convinces us that the knowledge of the state team . . . must be imputed to the federal team. We have little difficulty in concluding that the state investigators functioned as agents of the federal government under the principles of agency law utilized in *Giglio.* The state agents were in a real sense members of the prosecutorial team.").

who participated in the investigation of the case, pursuant to F.R.E. 801(d)(2) because "individual agents do not bind the sovereign except in rare circumstances." Docket entry 81, 6-7 (citations omitted). However, the cases it cites in support of this proposition do not support it, and do not apply to this case.

Officer and deceased officer were commissioned law enforcement officers, employed full-time by a police department, and initiated the investigation on behalf of law enforcement. Specifically, officer collected powder contained in the envelope and letter for further testing and processing. Officer made contact with the postal carrier immediately after the delivery of the letter to get more information from him to advance the investigation. Officer used his radio to call for more assistance from law enforcement in processing the crime scene. Officer called his supervisor, deceased officer, to report the incident and to get more assistance.

Deceased officer arrived on scene, and he worked with officer to test the powder substance numerous times to identify it. Deceased officer communicated with the CFPD Chief, at least in part, to get instructions as to how to proceed with the investigation. The deceased officer retrieved evidence bag(s) to collect the letter, envelope, and powder for further forensic testing. The deceased officer took custody of the letter, envelope, and powder, and took it away from the crime scene to the CFPD. Both officer and deceased officer shared with SLED the steps they took during the early stages of the investigation. Officer will likely testify as to what steps he and deceased officer took to test the powder substance, to collect the most important piece(s) of physical evidence in the Government's

case (the stamp on the envelope the Government claims contains the Defendant's DNA), and what deceased officer did with the evidence. Contrary to the Government's claims, officer and deceased officer played key roles in the early stages of the investigation: collecting and processing the most important piece of physical evidence for the Government, among other important tasks they performed.

None of the Government's authority concerns facts that are close to the facts in this case. For example, one of its cases concerned an out-of-statement made by non-police officers who were working as informants for the police, one of whom was even the brother of a defendant (*Prevatte*). Another of its cases concerned a statement made by a person found "not to be an employee of the Government" (*Lippay*). Another case concerned an out-of-court statement made by police officers who were investigating completely different cases at the time they made the statements (*Garza*). Still another concerned a statement that contained double hearsay (a police report that referenced the statement of an informant which the trial court found to be hearsay) (*Arroyo*). Put simply, none of the Government's authority supports the notion that out-of-court statements made by members of the prosecution team during and/or concerning the investigation of the case at bar are inadmissible hearsay.

The Government takes issue with the Defendant's citation to *Barile* in support of his argument that police officer's out-of-court statements can constitute admissions by party opponents. "*Barile* does not address whether a law enforcement officer investigating a criminal matter is a party opponent because there was no need." Docket entry 81, at 8.

"*Barile* has no impact on the general rule in criminal cases that Government investigators are a disinterested party and are not considered party opponents."  Docket entry 81, at 9. The North Carolina Court of Appeals disagrees.

In *North Carolina v. Villeda*, 599 S.E.2d 62 (N.C. Ct. App. 2004), Trooper Carroll stopped Villeda, a Hispanic male, and later arrested Villeda for DWI.  Villeda moved to dismiss the case and suppress evidence Trooper Carroll collected as a result of the traffic stop.  He argued that Trooper Carroll stopped him because he was Hispanic, which was an impermissible bases for a detention under the 4th Amendment.

In support of his motions, Villeda called lawyers who had other cases with Trooper Carroll and other law enforcement officer(s), all of whom, testified that Carroll had made ethnically biased statements to them, like "[I]f they're Hispanic and they're driving, they're probably drunk."  *Villeda*, 599 S.E.2d at 63.  The trial court ultimately dismissed the case, in part on the testimony of these witnesses, and the State appealed.

On appeal, the State argued, in part, that

> a majority of the defense evidence was based on impermissible hearsay, i.e. testimony regarding statements allegedly made by Trooper Carroll, and that the trial court erred in relying on this evidence in reaching its decision. Defendant counters that the evidence was admissible under the exception to the hearsay rule for admissions by agents of a party-opponent. *See* N.C.G.S. § 8C–1, Rule 801(d)(D) (2003).

*Villeda*, 599 S.E.2d at 65–66.

The North Carolina Court of Appeals flatly rejected the State's argument and relied on *Barile.*

> The question whether Rule 801(d), identical to the Federal Rules of Evidence, *see* Fed.R.Evid. 801(d)(2) (2004), applies to statements by government agents for the purpose of a criminal proceeding has yet to be decided in North Carolina; **however, the Fourth Circuit Court of Appeals has clearly resolved the issue                in                defendant's                favor.** ***See United States v. Barile,*** **286 F.3d 749, 758 (4th Cir.2002) (holding        that statements by an FDA employee were made "in her capacity as a government official on matters within the scope of her employment, and as such, the statements are of a party-opponent and therefore not hearsay");** *see also Rodela v. State of Texas,* 829 S.W.2d 845, 849 (Tex.App.1992) (applying party-opponent admission exception to statements by a sergeant who was an employee of the police department and spoke concerning actions taken in his official capacity). **As there is nothing in the plain language of Rule 801(d) to suggest that it does not apply to the prosecution in a criminal case, we adopt the position taken in *Barile.***

*Villeda*, 599 S.E.2d at 66 (emphasis added).

## A final thought

Much of the parties' discussion has centered on the connection the declarants of these out-of-court statements have with the Government.  F.R.E. 802(d)(2)(B) also renders out-of-court statements non-hearsay when the statement "is one the party manifested that it adopted or believed to be true."

The statements the Defendant seeks to introduce come almost exclusively from the Government's discovery productions.  The Government has not indicated to defense counsel that it believes particular statements law enforcement officers made during the investigation, especially statements made by officer and deceased officer, are false.  In the

absence of this notification (which *Giglio* arguably requires), is it not fair to conclude that

the Government believes the statements of these law enforcement officers are true?  Hence,

these statements constitute admissions by party-opponents.

## **CONCLUSION**

[T]he question whether Rule 801(d), applies to statements by government agents for

the purpose of a criminal proceeding. . . has clearly(been) resolved  (by the Fourth Circuit

Court of Appeals) in defendant's favor." *Villeda*, 599 S.E.2d at 66 (citing *Barile*).

.

> Respectfully submitted,
>
>
> s/ Andrew B. Moorman, Sr.
> Attorney for Defendant
> Moorman Law Firm, LLC
> 416 East North Street
> 2nd Floor
> Greenville, South Carolina 29601
> 864-775-5800
> andy@andymoormanlaw.com
> Federal ID # 10013

Greenville, South Carolina
July 26, 2024.