IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 8:23-0749 |
| | ) | |
| | ) | |
| -vs- | ) | **MOTION FOR** |
| | ) | **JUDGMENT OF** |
| | ) | **ACQUITTAL OR** |
| J. CHRISTOPHER MCCASLAN | ) | **FOR NEW TRIAL** |

COMES NOW, the Defendant, J. Christopher McCaslan, who moves this Court for a judgment of acquittal pursuant to Fed. R. Crim.P. 29 or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33.  The Government presented insufficient evidence to satisfy each and every element of the offenses in each of the four counts of the Second Superseding Indictment, and, in the alternative, the interests of justice require a new trial.

## **FACTS**

The Defendant's trial began on August 12, 2024, and the Government presented witness testimony, physical evidence, and documentary evidence.  The parties submitted their closing arguments, the Court instructed the jury, and the jury began its deliberations on the afternoon of Wednesday, August 14, 2024.  They adjourned on Wednesday evening, returned on Thursday morning, and ultimately returned guilty verdicts on each of the four counts of the Second Superseding Indictment.

The Court took copious notes during the trial, and the Defendant would not seek to supplement the Court's already comprehensive understanding of the facts in the absence

1

of a transcript. Therefore, in the "Argument" section of this Motion, the Defendant will rely on the defense team's recollection of the evidence presented.

## THE LAW

In *United States v. Gutierrez*, 2024 WL 2060125, at *1 (E.D. Va. 2024), the district court articulated the standards a trial court should apply in ruling on post-trial motions pursuant to Rules 29 and 33.

> Pursuant to Federal Rule of Criminal Procedure 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In conducting such a review of the evidence, a court is obligated to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by "substantial evidence*." United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)). "Substantial evidence" is defined as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006) (citation omitted).

> A Rule 29 determination focuses on both the elements of the offense charged and on the factual sufficiency of the evidence. Federal Rule of Criminal Procedure 33 permits a court to vacate a conviction "and grant a new trial if the interest of justice so requires," *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (quoting Fed. R. Crim. P. 33(a)); however, this is a highly disfavored remedy that a court should grant only "sparingly," *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017) (quoting *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)). A jury verdict is not to be overturned except in the rare circumstance when the evidence "weighs heavily" against it. *Smith*, 451 F.3d at 217 (citing *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)).

A motion for new trial pursuant to Rule 33, however, provides the Court with more latitude than a motion for judgment of acquittal pursuant to Rule 29. "The court's authority under Rule 33 is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence—namely the court may evaluate the credibility of the witnesses."

2

*United States v. Gengler*, 2009 WL 5549225, at *20 (E.D. Va. 2009) (internal quotation marks and citations omitted) (granting the Defendants' motion for judgment of acquittal and conditionally granting the Defendants' motion for new trial).

## ARGUMENT

A judgment for acquittal, or, in the alternative, a motion for new trial is appropriate under the circumstances: the Government's evidence failed to satisfy all of the elements of the offenses charged. Further, the witnesses and evidence on which the Government relied to prove that the <u>Defendant</u> was the author and/or sender of the letters were simply not credible nor helpful in assisting the jury in determining who sent the letters.

### <u>Insufficient evidence requires the Court to enter a judgment of acquittal.</u>

Pursuant to Fed.R.Crim.P. 29, "[t]he Court reviews whether there is substantial evidence to support the jury verdict, meaning that ... the record must demonstrate a lack of evidence from which a jury could find guilt beyond a reasonable doubt." *United States v. Elfenbein*, 2023 WL 8829261, at *22 (D. Md. 2023) (internal quotation marks and citations omitted). A "reasonable doubt" is "a doubt that would cause a reasonable person to hesitate to act." *Victor v. Nebraska*, 511 U.S. 1, 20, (1994). The Government's evidence, or lack thereof, warrants a judgment of acquittal on each count of the Second Superseding Indictment.

3

<u>Count 1</u>

Count 1 of the Second Superseding Indictment charges the Defendant with cyberstalking, a violation of 18 U.S.C. § 2261(A)(2)(B). The Court instructed the jury, in part, that

> [t]he government must establish beyond a reasonable doubt that the defendant engaged in two or more acts which demonstrated a continuity of purpose to cause, attempt to cause, or which would reasonably be expected to cause substantial emotional distress to the victim. You may consider each communication between the defendant and the victim to be a separate act.

Docket entry 103, at 29-30.

The Government centered it case on three communications in its attempt to prove Count 1: a letter the Nursing Board purportedly received in October 2021, the letter that Jordan Smith and his ex-girlfriend received on November 9, 2021, and the letter USPS employees intercepted on November 10, 2021.

Both the Government and the Defendant introduced the following evidence, in part:

- The Government's handwriting expert could not opine that both envelopes for the November 9th and November 10th letters were written by the same person;

- The Government's handwriting expert could not opine that the Defendant's handwriting appeared on either envelope for the November 9th or November 10th letters;

- The Government's handwriting expert could not opine that the Defendant's handwriting appeared anywhere on the October 2021 Nursing Board letter;

4

- The Government alleged that the Defendant's DNA was only on one piece of evidence, the stamps associated with the envelope for the November 9th letter;

- The Defendant's ex-wife was aware of the Nursing Board investigation prompting the October 2021 letter and had been since March of 2021;

- The Nursing Board had numerous other ways to contact the Defendant's ex-wife other than the Defendant's email address; and

- The Government was unable to identify any fingerprints on any evidence as belonging to the Defendant.

Under these circumstances, any reasonable juror would hesitate to act in concluding that the Government proved beyond a reasonable doubt that the Defendant engaged in a "course of conduct" necessary to sustain a conviction on Count 1.

<u>Count 2</u>

The Court instructed the jury that, in order to prove Count 2, the Government had to satisfy three elements:

First: that the defendant deposited a communication in any post office or authorized depository for mail, to be sent or delivered by the Postal Service or caused to be delivered by mail;

Second: that the communication contained a threat to kidnap any person or threat to injure the person <u>to whom the letter was addressed</u> or another person; and

Third: that the defendant did so knowingly.

Docket entry 103, at 32 (emphasis added).

The communication that was the subject of Count 2 was sent to "318 Rice Street" without any listing of a person's name on the envelope, and the letter inside had no

5

salutation, contained no proper names, and failed to designate on its face to whom the letter was addressed. Under these circumstances, any reasonable juror would hesitate to act in concluding that the Government proved beyond a reasonable doubt that the communication was "addressed to" another person necessary to sustain a conviction on Count 2. But see generally, *United States v. Rendelman*, 641 F.3d 36, 48 (4th Cir. 2011) (internal quotation marks and citations omitted) (stating, in determining to whom the threat is "addressed," "[i]ndeed, that subsection deals with threatening communications and not just the envelopes containing them. Hence, a threatening communication includes more than the envelope—it includes the contents thereof.").

<u>Counts 3 and 4</u>

Counts 3 and 4 charged the Defendant with a violation of 18 U.S.C. § 1038(a)(1). The Court charged the jury that to demonstrate a violation of this statute, the Government had to prove three elements:

First: that the defendant knowingly engaged in conduct with the intent to convey false or misleading information;

Second: that the defendant conveyed information under circumstances in which such information may reasonably have been believed; and

Third: <u>that the information indicated that a violation of biological weapons statute, chemical weapons statute, or weapons of mass destruction statute was taking place or would take place.</u>

Docket entry 103, at 34 (emphasis added).

6

Initially, the Government's evidence at trial seemed to focus on the identity of the author of the November 9th and 10th letter as the falsehood and not necessarily the substance of the letters themselves.

Further, the statute requires that the Defendant intended to convey false information, and that false information indicated that a violation of certain weapons statutes was taking or would take place.

None of the information conveyed in the November 9th or November 10th letters "indicated that a violation" of a weapons statute was taking place or would take place. The text of the November 9th letter read



> YOU THINK YOU CAN PRESS CHARGES AGAINST ME. I'VE ALREADY BEAT YOU AT YOUR ON GAME. I GOT CONNECTION TO. YOU CAN NOT TOUCH ME. I KNOW HOW DIRTY YOU ARE. YOU AND THAT DOG YOU LIVE WITH CAN KISS MY ASS. IF I SEE HER WHEN I WORK WITH HER AGAIN I WILL BEAT HER ASS. YOU WILL GET WHATS COMING TO YOU. YOU CAN NOT HIDE BEHIND THAT BADGE.

Nowhere in the letter is the presence of the powder discussed, what the powder is, or the effects that exposure to the powder will bring to the recipients.

The text of the November 10th letter read



> PERRY I KNOW HOW DIRTY YOU ARE. YOU TRIED TO GET ME LOCKED UP. YOU TIRED TO GET MY KID IN TROUBLE. YOU WILL PAY FOR WHAT YOU DONE. I THOUGHT WE WERE BETTER THAN THAT. I'VE DONE FAVORS FOR YOUR FELLOW OFFICERS AND GET TREATED LIKE THIS. I WILL START TALKING IF I GO TO JAIL. TELL YOUR ASSISTANT CHIEF TO PAY ATTENTION.

Again, nowhere in the letter is the presence of the powder discussed, what the powder is, or the effects that exposure to the powder will bring to the recipients. In fact, one who

7

reads both letters would have no idea that any powder accompanied the letters or any powder would be used to carry out the threats.

The wording of these letters is a far cry from the language that other communications punished under this statute have had. See generally, e.g., *United States v. De Vaughn*, 694 F.3d 1141(10th Cir. 2012) (Defendant mailed multiple letters to members of Congress and the President that contained a powder substance and "[t]he letters included statements such as 'Have you heard of anthrax? ? ? Get a whiff of this Sambo,' 'Your government rules are suffocating *us*!!! Take a whiff of *this*!'"); *United States v. Keyser*, 704 F.3d 631 (9th Cir. 2012) (Defendant mailed numerous packets of sugar labeled "anthrax" with a biohazard symbol).

In the absence of a connection between the language in either letter and the powder, the false information conveyed in the letters, even if proven, could not and did not "indicate() that a violation of a biological weapons statute, chemical weapons statute, or weapons of mass destruction statute was taking place or would take place." See *supra*, at p. 6. Under these circumstances, any reasonable juror would hesitate to act in concluding that the Government proved beyond a reasonable doubt that the information contained in either letter "indicated that a violations of" a federal weapons statute was occurring or would occur necessary to sustain a conviction pursuant to Counts 3 and 4.

### The interests of justice require a new trial.

"The Fourth Circuit has explained that in determining whether a new trial is warranted, the district court—sitting as a thirteenth juror—conducts its own assessment of

the evidence, unconstrained by any requirement to construe the evidence in the government's favor." *United States v. Elfenbein*, 2023 WL 8829261, at *23 (D. Md. 2023) (internal quotation marks and citations omitted); but see *id.,*. (internal quotation marks and citations omitted) ("However, this thirteenth juror language is tempered by the fact that [m]erely believing that the case could have come out the other way is not enough to warrant a new trial.").

In "conducting its own assessment of the evidence" as the thirteenth juror, the Defendant asks the Court to consider the quantum and quality of evidence the Government presented to prove who authored the letters, the Defendant v. his ex-wife. Specifically, the Defendant requests that the Court consider all the evidence presented, including but not limited to the following:[1]

- Catherine Leisy, the Government's DNA expert, testified that the presence of one's DNA on a surface or object does not necessarily indicate that the person ever came in contact with the surface or object or was even in the location of the surface or object. She then, on her own, gave an example of coming in contact with a person, transferring her DNA onto the person's hand, that person later touching a doorknob to enter that person's home, and leaving her DNA on the doorknob. Leisy said that her DNA could be on the doorknob of the person's home even though she was never there.

---

[1] The recitation of evidence is based on the undersigned notes and recollections, and he would defer to the Court if its recollections and/or notes are contradictory.

- Courtney Thompson, serologist, testified that she prepared for Leisy's analysis multiple items of evidence that law enforcement seized. She testified that two of these items were the top portions of the stamps the Government claimed contained the Defendant's DNA as well as an item connected to the back flap of the same envelope on which the stamps were placed. She testified that she used the same process to a prepare both items for analysis. She also testified that, based on SLED's DNA transfer log that the Defendant introduced, DNA coming from the back flap of the envelope may have been contaminated and that if this evidence was contaminated it was possible all the DNA could have been contaminated;[2]

- Officer Jordan Smith testified that he thought a deceased officer told him that the Defendant's ex-wife was deceased officer's confidential informant, defense counsel introduced evidence that deceased officer facilitated the dismissal of ex-wife's pending charges, and the deceased officer was the only one who had sole custody of the Government's most important DNA evidence for four hours or more;

- Special Agent Drake, who purportedly took custody of the envelope (which contained the stamps that the Government maintained had the Defendant's

---

[2] On redirect examination, Thompson testified that her processing of the stamp evidence occurred before her processing of the evidence from the back flap, and she was not aware of evidence that specifically showed that the DNA from the stamp(s) had been contaminated.

DNA), letter and powder from November 9th testified that he was unable to see all of the contents of the unsealed bag when he took possession of it, and could not testify with absolute certainty that the bag contained all of these items;

- Special Agent Foster and other(s) testified that an evidence bag without any markings on it, like the evidence bag the Government introduced as purporting to contain the November 9th letter, envelope, and powder, could fall victim to tampering without detection;

- The Defendant's ex-wife, who admitted on cross-examination that she had lied to a family court judge, a State Trooper, a Calhoun Falls Police Officer, and the Nursing Board, testified that the Defendant's handwriting was on one of the letters that was the subject of this prosecution when the Government's own handwriting expert could not offer such an opinion;

- The case agent, who acknowledged on cross-examination that he was the agent ultimately responsible for this entire investigation, falsely testified on direct examination that there was no evidence that ex-wife was aware of an essential fact, and defense counsel on cross-examination introduced a report that the case agent had written almost two years earlier which showed that ex-wife had knowledge of this essential fact;[3] and

- Jordan Smith's ex-girlfriend testified on cross-examination that she told the case

---

[3] On cross examination, the case agent also testified that he had conveyed this information in substance to the grand jury on two separate occasions in this case.

11

agent in 2022 that she told the Defendant facts that appeared in the relevant letters only after the letters were sent, meaning the Defendant could not have known the facts contained in the letters at the time they were sent.[4]

In this case

- wherein the person admittedly responsible for the entire investigation, the case agent, testified falsely before the petit jury (and potentially twice before the grand jury);

- wherein evidence showed that the other prime suspect, the Defendant's ex-wife, worked as a confidential informant for the officer who had sole custody of the Government's most important evidence for more than four hours;

- wherein evidence showed that DNA evidence collected in this case was likely contaminated (albeit evidence that did not directly implicate the stamps on the November 9th envelope);

- wherein the Government's own handwriting expert could not opine that the Defendant's handwriting was contained on any of the three letters/envelopes on which the counts of the indictment were based; and

- wherein the Government's own DNA expert testified that the presence of one's DNA on an object or surface did not necessarily prove that that person had ever

---

[4] On direct examination and/or redirect examination, the witness affirmed that she told the Defendant these facts before the letters were sent, and the Government introduced statements from the Defendant that contradicted what the witness told the case agent in 2022.

come in contact with that surface or object;

the interests of justice require the granting of a new trial pursuant to Fed.R.Crim.P. 33.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Defendant respectfully requests a judgment of acquittal on all counts or, in the alternative, a new trial.

Respectfully submitted,

<u>s/ Andrew B. Moorman, Sr.</u>
Attorney for Defendant
Moorman Law Firm, LLC
416 East North Street
2nd Floor
Greenville, South Carolina 29601
864-775-5800
andy@andymoormanlaw.com
Federal ID # 10013

Greenville, South Carolina
August 29, 2024.