IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. <u>8:23-cr-00749</u> |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHNATHAN C. MCCASLAN | ) | |

**GOVERNMENT'S RESPONSE TO RULE 29 & 33 MOTIONS**

The United States, by and through the undersigned counsel, hereby responds to the post-trial motions filed by Johnathan C. McCaslan.

**LEGAL STANDARD**

**A. Rule 29 Motion for an Acquittal**

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" <u>United States v. Beidler</u>, 110 F.3d 1064, 1067 (4th Cir. 1997). In reviewing the sufficiency of the evidence following a conviction, the court is to construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and must sustain the jury's verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. See <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). "If there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government," the Rule 29 motion must be denied. <u>United States v. Murphy</u>, 35 F.3d 143, 148 (4th Cir. 1994). The court "cannot make [its] own credibility determinations but must assume that the jury resolved all contradictions in testimony in favor of the Government." <u>United States v. United Med. & Surgical Supply Corp.</u>, 989 F.2d 1390, 1402 (4th Cir.1993).

1

Granting a Rule 29 motion is reserved for the rare case "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978). "A reviewing court, therefore, may not overturn a substantially supported verdict merely because it finds the verdict unpalatable or determines that another, reasonable verdict would be preferable." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996).

### B. Rule 33 Motion for a New Trial

Under Rule 33, this court has the discretion to grant a new trial "if the interests of justice so require." Fed. R. Crim. P. 33. "A new trial is a drastic remedy intended for the rare case." United States v. Chin, 181 F.3d 92, *2 (4th Cir. 1999) (table decision). "We have held that a district court should exercise its discretion to grant a new trial 'sparingly' and that the district court should grant a new trial based on the weight of the evidence 'only when the evidence weighs heavily against the verdict.'" United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997). In determining if the evidence weighs heavily against the jury verdict, "the court's authority is much broader than when it is deciding a motion to acquit on the basis of insufficient evidence . . . [and] the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government." United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir.1985).

## ARGUMENT

The Government presented evidence that in the midst of a bitter divorce, Defendant sought to score a knockout punch and inflict emotional distress on his wife Kimberly. In so doing, Defendant sent letters to the nursing board, a Calhoun Falls police officer, and the Calhoun Falls Police Department ("CFPD"). The last two letters mentioned contained threats and a white powder to make the recipients believe that they had come in contact with a dangerous substance. Investigation revealed that the nursing board letter was sent in response to a request for a statement

sent to Defendant's email account and that the stamps on the letter to the police officer contained Defendant's DNA. As for the CFPD letter, certain facts contained in the document pointed to Defendant.

I.     **Sufficient evidence existed for a reasonable jury to convict the Defendant on the stalking count.**

The offense of stalking charged in Count 1 requires proof of the following elements:

> First: That the defendant possessed the intent to injure, harass, or intimidate the victim;
>
> Second: That the defendant pursued that intention through a course of conduct that makes use of the mail, any interactive computer service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce; and
>
> Third: That the defendant's conduct in fact caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress to the victim.

United States v. Davis, 2017 WL 8293631 (E.D.N.C.) (jury charge given by the court as modified).

Defendant's main argument is that the Government failed to prove a course of conduct. The evidence at trial showed that beginning at least in early October 2021, Defendant put in motion a scheme to harm his wife. He made sure that Jordan Smith knew Kimberly's license was suspended and when she would be in town. (Testimony of Jordan Smith). Based on this information, Smith encountered Kimberly on October 9, 2021 at the Savannah Grill, and she was driving under suspension and gave false information. Eleven days later, Tracy Adams sent an email to Kimberly at aparamedic01@hotmail.com requesting a statement connected with an LLR investigation. (Testimony of Tracy Adams). The email address, the parties stipulated, belonged to Defendant. On October 27, 2021, Adams received a letter in the mail allegedly from Kimberly in which she confessed to multiple crimes, such as forging prescriptions and stealing controlled substances, and suggested that Adams review the guardian ad litem report. This "confession" and

3

suggestion were very similar to what Defendant told SLED agents about Kimberly during the recorded interview. (Interview of Johnathan McCaslan).

On October 24, 2021, Perry Hill responded to Defendant's marital home regarding the sale of a generator by Kimberly. (Testimony of Perry Hill). Later that week Traeco Hoover told Defendant that he was seeking warrants related to the generator dispute. This was in response to Defendant pushing for law enforcement action. (Interview of Johnathan McCaslan). On October 29, 2021, Hoover and Smith went to the local magistrate. Smith was successful in obtaining warrants for Kimberly, but Hoover was not. (Testimony of Jordan Smith). On that same day or the next, Defendant learned that warrants did not issue for the generator incident, but they did issue related to the Savannah Grill incident. (Interview of Johnathan McCaslan). Perry Hill testified that Defendant was very unhappy about the judge's declination on warrants related to the generator. (Testimony of Perry Hill).

On November 8, 2021, Defendant met Jordan Smith at the 7-11 in Calhoun Falls. Defendant told him that Kimberly had been asking questions about him and his work as a narcotics officer. (Testimony of Jordan Smith). The next day, Smith and Tamera Lee received a threatening letter containing white powder. (Testimony of Tamera Lee). Based on the letter's mention of warrants and a working relationship with Lee, they concluded that Kimberly was the author. Kimberly, however, was not aware that Smith had obtained warrants for her related to the Savannah Grill. (Testimony of Kimberly McCaslan). Defendant did know about the warrants and that Kimberly and Tamera had worked together at a local nursing home. (Interview of Johnathan McCaslan).

On November 9, 2021, the post office intercepted a threatening letter with white powder addressed to the CFPD and Perry Hill. The writer referred to an attempt to get the writer and her

4

son in trouble. Based on the contents, Hill believed that Kimberly was the likely author. Hill believed the letter was based on the generator incident in which Hill sought to interview Kimberly's son and then spoke with her. (Testimony of Perry Hill). At a minimum the course of conduct involved the following:

- Providing Smith with information about Kimberly's license and whereabouts;
- Drafting and sending the confession letter to Tracy Adams;
- Urging Smith and Hoover to obtain warrants for Kimberly;
- Telling Smith that Kimberly had been asking questions about him;
- Drafting and sending the letter to Smith and Lee; and
- Drafting and sending the letter to the CFPD.

The jury could easily infer that, by the nature of these actions, Defendant possessed the intent to injure, harass, or intimidate Kimberly. Indeed, he tried to have her arrested and barred from the practice of nursing. Kimberly testified to the emotional distress these events caused. (Testimony of Kimberly McCaslan). Accordingly, there is sufficient evidence to support a conviction on Count 1.

> II. **Sufficient evidence existed for a reasonable jury to convict the Defendant for mailing a threatening communication.**

The offense charged in Count 2 of the indictment requires proof of the following:

> First: that the defendant deposited a communication in any post office or authorized depository for mail, to be sent or delivered by the Postal Service or caused to be delivered by mail;
>
> Second: that the communication contained a threat to kidnap any person or threat to injure the person to whom the letter was addressed or another person; and
>
> Third: that the defendant did so knowingly.

Eric Wm. Ruschky, Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina 134 (2020 Online Edition)

Defendant's main contention is that the letter and envelope were not "addressed" to a person because the envelope indicated "318 Rice Street" and the letter contained no salutation. As Defendant acknowledges in his Motion, Fourth Circuit law does not support his argument. See United States v. Rendelman, 641 F.3d 36, 46 (4th Cir. 2011) ("Nevertheless, the person or entity to whom the threatening communication is addressed is not an essential element of a § 876(c) offense. Section 876(c) merely requires proof that the accused knowingly mailed the threatening communication, not that he also intended to threaten the person of the recipient thereof. The phrase 'addressed to any other person' in § 876(c) simply means that an accused does not violate that provision by mailing a threatening letter addressed to himself."). The Fourth Circuit recognizes that a jury may consider the "contents of letter" when deciding to whom it is "addressed." Id. at 48. Tamera Lee testified that based on the contents, she concluded that the letter was directed or addressed to her and Jordan Smith. (Testimony of Tamera Lee).

The letter itself supports her conclusion because it referred to the warrants obtained by Smith and Lee's working relationship with Kimberly. Hence, a jury could conclude the letter was addressed to Smith and Lee.

As for the other two elements, postal employees testified about the letter being in the mail stream and being delivered to 318 Rice Street. The letter contained a threat to beat up Lee, which is a threat to injure the person of another under the statute. Based on the mailing and drafting of the letter, the jury could easily conclude that Defendant acted knowingly.

III.   **Sufficient evidence existed for a reasonable jury to convict the Defendant for sending hoax letters.**

The offense charged in Counts 3 and 4 of the indictment requires proof of the following:

First: that the defendant knowingly engaged in conduct with the intent to convey false or misleading information;

6

> Second: that the defendant conveyed information under circumstances in which such information may reasonably have been believed; and
>
> Third: that the information indicated that a violation of biological weapons statute, chemical weapons statute, or weapons of mass destruction statute was taking place or would take place.

United States v. Hale, Case No. 2:06-871, ECF No. 294 at 48 (jury instruction as given by the court) (as modified).

The thrust of Defendant's argument is that the written communications did not discuss the powder or the potential effect of the powder; therefore, false information about an attack on the recipients was not conveyed.

Courts have dealt with this very argument and have rejected it. In United States v. Santiago, 2016 WL 954819, at *2 (S.D.N.Y. Mar. 11, 2016), the defendant sought to dismiss a § 1038(a)(1) charge because he made no explicit statements about an attack in the letter he sent to government employees. The Court declined to grant the motion.

> With regard to the False Information and Hoaxes Act, 18 U.S.C. § 1038(a)(1), the statute requires that a defendant engage in conduct intended to convey false or misleading information that a chemical attack is taking place and that it is reasonable to believe that such an attack is taking place. Defendant notes that he did not write that an attack was occurring. But the False Information and Hoaxes Act does not require a defendant to make any explicit statements. Thus, defendant's focus on the lack of a false statement is misplaced. Importantly, the statute focuses on a defendant's conduct. **Here, a jury could conclude that defendant's conduct—placing a white powdery substance into an envelope with a note containing the hostile messages—intended to convey the false information that the envelope contained a dangerous chemical substance**. . . . Further, a jury could also conclude that it was reasonable for the IRS employee who opened the envelope to see the white powdery substance, read the notice, and believe that an attack was taking place. Thus, the Information alleges conduct that a jury could conclude violates the False Information and Hoaxes Act.

Santiago, 2016 WL 954819, at *2 (emphasis added).

Similarly, in this case the jury could properly conclude that letters containing threats to the recipients coupled with the white powder conveyed false information that a chemical, biological, or WMD attack was underway. At trial there was testimony that Jordan Smith and Tamera Lee

7

believed they were under attack. Smith suspected the substance was fentanyl. Smith instructed Lee to dump the letter outside, wash her hands in cold water, and to put on gloves. (Testimony of Jordan Smith). Smith took the matter seriously, located the letter carrier, and advised that he also wash his hands because of handling the letter.

The SLED bomb squad was summoned twice to Calhoun Falls because of the threatening letters and white powder. The bomb squad donned protective gear and took appropriate precautions. The SLED agents who recovered the 318 Rice Street letter stored it in a metal box in the bed of a pickup truck rather than the lock box in another agent's SUV because they were afraid of contamination from the powder. (Testimony of Jake Drake). Agents further testified that when encountering a letter with powder, they fear a dangerous chemical or a biological agent such as Anthrax. (Testimony of Agent Adam Slizewski).

In summary, by sending threatening letters with white powder in them, Defendant intended to convey information that would lead a reasonable person to believe that they were under attack from some chemical, biological, or WMD.

    IV.    **Under Rule 33, the interests of justice do not require a new trial.**

Defendant urges that the evidence weighs so heavily against the verdict that this Court should reject the deliberation of the jury of his peers and grant a new trial. The Government believes that the summary of the testimony presented above supports the verdict. See United States v. McClellon, 578 F.3d 846, 857 (8th Cir. 2009) (The grant of a new trial should be used sparingly and only when the court is sure that the evidence weighs heavily against the verdict such that a miscarriage of justice may have occurred.). This jury did not go rogue and convict Defendant based on caprice. Instead, they carefully listened to the testimony and came to a reasonable result: Defendant tried to frame his wife for crimes she did not commit to land the knock-out punch in

the divorce proceedings. The letters contained information that he knew but Kimberly did not know. His DNA was found on the stamps of the Rice Street letter. The nursing board letter was sent based on a request for a statement sent to Defendant' email address. This is not one of the rare cases where a grant of a new trial would be proper. The jury's verdict was reasonable and should stand.

## CONCLUSION

In reviewing the sufficiency of the evidence and construing it in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, this Court must sustain the jury's verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. For all four counts, the jury found the essential elements beyond a reasonable doubt and there was substantial evidence supporting this decision.

As for the request for a new trial, a district court should exercise its discretion sparingly and only when the evidence weighs heavily against the verdict. Here, the evidence substantially supports the verdict, and a new trial is not warranted.

    Respectfully submitted,

    ADAIR F. BOROUGHS
    UNITED STATES ATTORNEY

By: *s/William J. Watkins, Jr.*
    William J. Watkins, Jr.  (Fed. ID # 07863)
    Assistant United States Attorney
    55 Beattie Place, Suite 700
    Greenville, SC 29601
    Tel.:   864-282-2100
    Fax:   864-233-3158
    Email: bill.watkins@usdoj.gov